# United States Court of Appeals
## For the First Circuit

No. 12-2427

TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO;
SANDRA TORRES-LÓPEZ, in her official capacity as President
of the Telecommunications Regulatory Board of Puerto Rico;
VICENTE AGUIRRE-ITURRINO, in his official capacity as
Associate Member of the Telecommunications Regulatory Board
of Puerto Rico; NIXYVETTE SANTINI-HERNÁNDEZ, in her official
capacity as Associate Member of the Telecommunications
Regulatory Board of Puerto Rico; and ALEJANDRO GARCÍA-PADILLA,
in his official capacity as Governor of Puerto Rico,

Defendants, Appellants,

v.

CTIA - THE WIRELESS ASSOCIATION,

Plaintiff, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before
Torruella, Lipez, and Kayatta,
Circuit Judges.

Robert F. Reklaitis, with whom Cynthia Fleming Crawford and
Leclair Ryan, were on brief for appellants.
Todd M. Hinnen, with whom John K. Roche and Perkins Coie LLP,
were on brief for appellee.

May 9, 2014

**TORRUELLA, Circuit Judge.** At issue in this case is a law passed by the government of Puerto Rico to obtain information about the owners of prepaid cell phones. The Puerto Rican government passed the Act of Dec. 27, 2011, No. 280, 2011 P.R. Laws 2963 (codified at P.R. Laws Ann. tit. 27, §§ 531-539 (Supp. 2013)) (the "Registry Act"), in order to combat the use of anonymous prepaid cell phones for criminal purposes in Puerto Rico. The Registry Act functions by requiring telephone companies and other sellers of prepaid phones to provide information about the purchasers of such phones to the government of Puerto Rico. The government then compiles a registry with the names, numbers, and addresses of all those who purchase prepaid cell phones in Puerto Rico.

The question before us is whether the Registry Act conflicts with and is preempted by the federal Stored Communications Act, 18 U.S.C. §§ 2701-2712 (the "SCA"), which restricts the ability of wireless communications providers to release customer information to governmental entities. After careful consideration, we affirm the district court's finding that the Registry Act is preempted by the SCA and that its enforcement should be enjoined.

## I. Background

### A. The Registry Act

On December 27, 2011, Puerto Rico Governor Luis Fortuño signed into law the Registry Act. According to the Act's

explanatory statement, while many individuals legitimately purchase prepaid phones to avoid signing burdensome contracts or paying for unnecessary service, the criminal use of such phones has become widespread in Puerto Rico. See Registry Act, pmbl.[1] The Registry Act was thus created to address the "problem . . . that the owners of these mobile units, because they are pre-paid, are not registered by the various companies, making it impossible for the authorities to track down their owners" in the event the phone is used to commit a criminal offense like extortion. Id.

To combat this problem, the Registry Act instructs the Telecommunications Regulatory Board of Puerto Rico (the "Board"), a government agency tasked with regulating telecommunications services in Puerto Rico, to create and maintain a registry of prepaid cell phone numbers. Id. §§ 3-5. To ensure that the Board is provided with the information it needs to create a registry, the Act requires that:

> Every telephone company, natural or legal person, or business entity that sells a pre-paid mobile telephone unit shall require photo identification at the time of purchase and shall register with the Board the name and physical and postal address of the owner of

---

[1] All references to the Registry Act in this opinion are based on an English-language translation of the Act used by the parties in the proceedings below and again on appeal. Although the Puerto Rico Legislative Assembly has yet to provide an official, English-language translation of the Registry Act, CTIA filed in the district court a translation of the Act on which both parties rely. Appellants do not dispute the accuracy of the translation, which is attached to this opinion as an Appendix.

-3-

                    the unit and an alternative telephone number,
                    the number of the unit, its make, model, and
                    serial number.

Id. § 5.   This information must be provided to the Board within

thirty days of purchase, and the penalty for failing to do so is a

fine of up to $25,000 for each violation.   Id. § 8.

**B. Procedural history**

          Plaintiff-Appellee  CTIA  -  The  Wireless  Association

("CTIA") is a non-profit corporation that represents the interests

of the wireless communications industry.   CTIA's members include

Sprint, AT & T, T-Mobile, and others who sell prepaid cell phones

in Puerto Rico.   On February 15, 2012, CTIA sued the Board, three

of the Board's members in their official capacities, and Governor

Fortuño in his official capacity (collectively, the "Appellants").

CTIA sought declaratory and injunctive relief, arguing that the

Registry Act was preempted by the SCA because the SCA prohibits

CTIA's members from turning over to the government -- without a

subpoena -- the same information that the Registry Act requires

them to provide.

          Appellants moved to dismiss the complaint, and the

district court denied the motion to dismiss on August 2, 2012,

adopting the magistrate judge's recommendation and finding that the

two laws clearly conflict.   The district court determined that the

plain language of the SCA prohibits the disclosure of cell-phone

customer information in the manner that the Registry Act requires.

The district court then referred back to the magistrate judge the question whether the court should permanently enjoin the enforcement of the Registry Act. On October 18, 2012, the district court adopted the magistrate judge's findings and recommendations and granted CTIA's motion for a permanent injunction. This timely appeal followed.

## II. Discussion

On appeal, Appellants argue that the Registry Act constitutes a valid exercise of Puerto Rico's police powers that does not conflict with the SCA. Pointing to the structure and purpose of the SCA, Appellants contend that the SCA protects only customer information related to specific communications. It does not, they argue, protect the information required by the Registry Act, like a customer's name and address captured at the time of purchase and untethered to any particular communications or transactional record. Thus, Appellants conclude that the SCA and Registry Act do not conflict, the Registry Act is not preempted, and the judgment of the district court should be reversed.[2]

---

[2] During the course of proceedings below, Appellants' Response in Opposition to CTIA's Motion for Permanent Injunction expressly asked the district court to analyze the Registry Act in toto and to refrain from addressing any possibility of severing application of the Act to non-CTIA members, arguing that the effectiveness of the Act depends on its full application. This is perhaps unsurprising, given that the challenged provisions form the functional core of the Registry Act. See Ackerley Commc'ns of Mass., Inc. v. City of Cambridge, 135 F.3d 210, 216 (1st Cir. 1998) (holding that severability clause could not save unconstitutional ordinance because the court could not conclude that the legislature viewed

-5-

We review the district court's finding that the Registry Act is preempted by the SCA de novo. See Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 472 (1st Cir. 2009); SPGGC, LLC v. Ayotte, 488 F.3d 525, 530 (1st Cir. 2007).

Under the Supremacy Clause of the Constitution, "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "By virtue of this commandment, state law that conflicts with federal law is a nullity." Mass. Ass'n of Health Maint. Orgs. v. Ruthardt, 194 F.3d 176, 178 (1st Cir. 1999). Nullification of state law is no small matter, and thus we "start with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress." Grant's Dairy - Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d

---

the offending provisions "as anything but a unitary part" of the ordinance); see also Reno v. ACLU, 521 U.S. 844, 884-85 (1997) ("This Court will not rewrite a law to conform it to constitutional requirements." (internal quotation marks and citation omitted)). Appellants seemingly maintain this position on appeal, as they do not challenge the scope of the injunction -- which enjoins enforcement of the Registry Act in toto -- or argue that severance of the disputed provisions is a possibility. Thus, even if Appellants had not explicitly waived the issue below, their failure to raise it on appeal would have waived any potential claim regarding severability or the scope of the injunction. Cf. United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 338 (1st Cir. 2003) (limiting remand on issue of injunction's scope to only those claims briefed and argued on appeal).

8, 14-15 (1st Cir. 2000) (internal quotation marks and citation omitted).[3]

While there are a number of ways in which Congress could preempt state law, see SPGGC, 488 F.3d at 530-31 (describing express preemption, field preemption, conflict preemption, and complete preemption), relevant here is CTIA's claim of conflict preemption. Conflict preemption occurs when federal law is in "irreconcilable conflict" with state law, Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 31 (1996), as "when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Weaver's Cove Energy, LLC, 589 F.3d at 472-73 (internal quotation marks and citation omitted).

CTIA argues, and the district court found, that the Registry Act and the SCA directly and irreconcilably conflict because the SCA prohibits wireless service providers from providing customer information to the government without a subpoena, while the Registry Act requires the same. Appellants, on the other hand,

---

[3] Although the Commonwealth of Puerto Rico is a territory of the United States rather than a state, the test for preemption is the same. P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 499 (1998) ("[T]he test for federal pre-emption of the law of Puerto Rico at issue here is the same as the test under the Supremacy Clause . . . for pre-emption of the law of a State."); Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012) ("For preemption purposes, the laws of Puerto Rico are the functional equivalent of state laws.").

argue that the district court's reading of the SCA was overbroad, and that the SCA and the Registry Act do not regulate the same information. Before we proceed to analyze Appellants' claims on the merits, we begin with bit of background on the SCA.

## A. The SCA

The SCA is part of the Electronic Communications Privacy Act (the "ECPA"), which was enacted in 1986 "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S. Rep. No. 99-541, at 1-2 (1986). Title II of the ECPA is the SCA, which imposes several restrictions on the ability of communication service providers to divulge customer information to governmental entities.

In pertinent part, the SCA states that "a provider of . . . electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," unless an enumerated exception applies.[4]   18 U.S.C.

---

[4]  Exceptions to this prohibition include disclosures of customer records that are: (1) authorized by 18 U.S.C. § 2703, (2) consented to by the customer or subscriber, (3) "necessarily incident" to render service or to protect the service provider's rights or property, (4) provided to a governmental entity in emergency circumstances "involving danger of death or serious physical injury," (5) released to the National Center for Missing and Exploited Children following the submission of a § 2258A report, or (6) given "to any person other than a governmental entity."  18 U.S.C. § 2702(c).

§ 2702(a)(3). In its original form, the SCA dictated that "[a] provider of electronic communication service . . . shall disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications . . .) to a governmental entity only when the governmental entity [uses a subpoena or obtains a warrant, court order, or subscriber consent]." ECPA, Pub. L. No. 99-508, § 201, 100 Stat. 1848, 1862 (1986) (codified as amended at 18 U.S.C. § 2703(c)(1)).

In 1994, the SCA was amended in part so that different types of records and subscriber information would receive different levels of protection from disclosure. See Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414, 108 Stat. 4279 (1994). While the initial version of the Act had allowed law enforcement to obtain subscriber information and records with a mere subpoena, after the 1994 amendment, a subpoena is sufficient to obtain only a limited subset of records and information, like a customer's name, address, phone number, length of service, billing information, and call records.[5] See 18 U.S.C. § 2703(c)(2). To

---

[5] "[W]hen the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena," a service provider shall disclose its customer's: "(A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity . . . ; and (F) means and source of payment . . . ." 18 U.S.C. § 2703(c)(2).

obtain additional records or subscriber information, the government must obtain a court order, customer consent, or a warrant.  Id. § 2703(c)(1).

**B. Preemption**

Appellants begin by arguing that the Registry Act is designed to combat criminal extortion and thus constitutes a legitimate exercise of Puerto Rico's police power.  Accordingly, Appellants contend, we should assume that the Registry Act is not superseded by federal law unless preemption was "'the clear and manifest purpose of Congress.'"  Grant's Dairy, 232 F.3d at 14-15 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).  Appellants argue that no such purpose is manifested by the SCA, because the SCA regulates only transactional records and information related to communications, not basic subscriber information untethered to specific communications.

To support this claim, Appellants largely bypass the text of the relevant statutory provisions and instead emphasize the structure and titles of the ECPA.  Appellants first point to the title of subsection 2703(c), "[r]ecords concerning electronic communication service or remote computing service."  Appellants conclude that the phrase "[r]ecords concerning electronic communication service" refers only to communication-specific documents like call records.  As proof, they cite the title of the SCA, "Stored Wire and Electronic Communications and Transactional

Records Access."  From this title, Appellants conclude that subsequent references to "records" in the Act should be read to refer only to "transactional records."  According to Appellants, the structure and titles used in the ECPA prove that the SCA only protects wireless communications and transactional records associated with those communications, not a prepaid phone purchaser's name, address, and phone number.  They claim that the district court erred by relying exclusively on the language of § 2703 to find conflict preemption when it ought to have considered statutory design and legislative history.

Appellants are correct that "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998) (internal quotation marks and citation omitted).  As we have previously made clear, however, turning to titles and section headings to divine the meaning of a statute is a "practice [that] should not be indulged at the expense of the text itself."  Mass. Ass'n of Health Maint. Orgs. v. Ruthardt, 194 F.3d 176, 180 (1st Cir. 1999); United States v. Ozuna-Cabrera, 663 F.3d 496, 500 n.3 (1st Cir. 2011) ("[W]e do not rely on the titles of statutory enactments in plumbing their meaning . . . at the expense of the text itself." (internal quotation marks and citation omitted)).

Here, the text of the SCA is abundantly clear: communications service providers may not release "a record or other information pertaining to a subscriber to or a customer of such service . . . to any governmental entity" without the requisite process. 18 U.S.C. § 2702 (emphasis added). If there was any question as to whether Congress intended "record or other information" to extend beyond transactional records to include basic subscriber information like a customer's name, address, and telephone number, § 2703 readily answers the question in the affirmative:

> A governmental entity may require a provider of electronic communication service . . . to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity . . . [seeking a customer's name, telephone number, etc.] uses an administrative subpoena authorized by a Federal or State statute or a Federal of State grand jury or trial subpoena . . . .

Id. § 2703(c) (emphasis added). By its express language, the SCA does not limit its protections to transactional records like call logs. "[T]elephone connection records" are but one of six specifically enumerated types of protected information; a wireless service customer's name, address, length of service, telephone or instrument number, and means of payment are also explicitly protected by statute and cannot be released to a governmental entity without a subpoena. Id. § 2703(c)(2).

-12-

Where the text of a statute is clear, as it is here, we need not go on to consider the act's legislative history to divine Congress's intent.  Antilles Cement Corp., 670 F.3d at 320 ("We must evaluate the statute's language within the statutory scheme and look to the legislative history and policy only if that language is unclear." (emphasis added)).  Nevertheless, in an abundance of caution, we will proceed to consider briefly Appellants' argument that our interpretation of the statute is contrary to congressional purpose as evidenced by the SCA's legislative history.  See Ruthardt, 194 F.3d at 184 ("Although textual analysis resolves the statutory construction issue, we sometimes have looked to legislative history to confirm textual intuitions.").

Appellants believe that the ECPA's legislative history confirms that the SCA was intended to regulate only communications and transactional records relating to those communications.  They first quote an excerpt of a 1986 House Judiciary Committee Report on the bill that later became the ECPA.  The report summarizes the purposes of the Act, in relevant part, as amending the United States Code "to provide procedures for interception of electronic communications by federal law enforcement officers" and "to provide procedures for access to communications records by federal law enforcement officers."  H.R. Rep. No. 99-647, at 16 (1986).

-13-

Appellant's quotation does little to advance the ball. The ECPA certainly did, among other things, "provide procedures for access to communications records by federal law enforcement officers," but that broad summary of a lengthy bill does not suggest an intent contrary to the plain language of § 2703. In fact, the legislative history of the SCA corroborates the congressional purpose made manifest by the statutory text. When Congress amended the SCA in 1994, it did so -- in part -- by differentiating between types of subscriber information that had previously been treated identically under the Act. See Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414, 108 Stat. 4279 (1994). As the 1994 House Judiciary Committee Report explained, the amendment was "raising the standard for access to transactional data . . . to guard against 'fishing expeditions' by law enforcement," but "[l]aw enforcement could still use a subpoena to obtain the name, address, telephone toll billing records, and length of service of a subscriber to or customer of such service and the types of services the subscriber or customer utilized." H.R. Rep. No. 103-827, at 31-32 (1994). In other words, Congress expressly recognized the difference between transactional data and basic subscriber information in the SCA, affording the latter less protection, but nevertheless requiring a subpoena prior to its disclosure to law enforcement.

Appellants next point out that the Senate Judiciary Committee Report corresponding to the ECPA stated that the definition of "contents" would not include "the identity of the parties or the existence of the communication . . . or transactional records about it." S. Rep. No. 99-541, at 13. This definition, Appellants contend, shows that Congress actually meant "a transactional record" when it wrote "a record" in the SCA. We disagree. As an initial matter, the fact that Congress knew how to identify a "transactional record" but opted to use broader language in § 2703 "only underscores our duty to refrain from reading a phrase into the statute when Congress has left it out." Keene Corp. v. United States, 508 U.S. 200, 208 (1993). More to the point, the very same Senate Report specifically states that § 2703(c) "permits the provider of the service to divulge, in the normal course of business, such information as customer lists and payments to anyone except a Government agency." S. Rep. No. 99-541, at 38 (emphasis added). That Congress intended § 2703 to restrict the ability of a service provider to turn over even a list of customers to a governmental entity is thus abundantly clear.

Leaving no stone unturned, Appellants next refer us to statements by individual legislators who cosponsored versions of what became the SCA in 1986. Appellants believe that these statements show that the sponsors of the SCA never intended to protect basic subscriber information divorced from particular

communications. That effort is doomed from the start. "[T]he overarching rule is that statements by individual legislators should not be given controlling effect; rather, such statements are to be respected only to the extent that they are consistent with the statutory language." Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 699 (1st Cir. 1994) (internal quotation marks and citation omitted). This is no less true when the statements come from a bill's sponsors. Id.

Even if we were inclined to give weight to such statements, in this case, they offer us no reason to believe that Congress intended the SCA to function in a manner contrary to its express terms. Appellants point out that a cosponsor of the bill stated during House deliberations that "the legislation establishes clear rules for Government access to new forms of electronic communications as well as . . . transactional records regarding such communications." 132 Cong. Rec. H4039-01 (1986) (statement of Rep. Carlos J. Moorhead), 1986 WL 776505, at *26. Once more, Appellants are endeavoring to transform a general summary of a detailed Act into a limitation on its express terms, and the statement referenced simply does not support such a reading. Were we to accept Appellants' view of the import of Representative Moorehead's statement -- and we do not -- it would still do Appellants no favors, because "[i]n the game of statutory interpretation, statutory language is the ultimate trump card, and

the remarks of sponsors of legislation are authoritative only to the extent that they are compatible with the [statute's] plain language." United States v. Czubinski, 106 F.3d 1069, 1078 (1st Cir. 1997) (internal quotation marks and citations omitted).

With the formidable combination of clear statutory text and legislative history stacked against them, Appellants make one final effort to save the Registry Act, by pointing to the existence of telephone books. The names, numbers, and addresses of landline telephone owners, Appellants point out, are routinely published in telephone books that are publicly distributed. In fact, providers of telecommunications services are required to provide subscriber list information to "any person upon request for the purpose of publishing directories in any format." 47 U.S.C. § 222(e). Surely, Appellants reason, Congress, in passing the SCA, did not intend to undermine the long-standing tradition of lawful disclosure of basic subscriber information in telephone books.

This argument fails for two reasons. First, the Federal Communications Commission has exempted wireless service providers from § 222(e)'s disclosure requirements. In re Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information, 14 FCC Rcd. 15550, 15569 (1999) ("A [mobile service] provider . . . need not provide subscriber list information regarding its telephone exchange customers to requesting directory

publishers, except to the extent the . . . provider . . . publishes that information, causes it to be published, or accepts it for publication in any directory format.").  Second, and more critically, the  provisions of the SCA at issue in this case prohibit wireless service providers from disclosing "a record or other information pertaining to a subscriber . . . <u>to any governmental entity</u>," 18 U.S.C. § 2702 (emphasis added), without the requisite process, <u>id.</u> § 2703.  Section 2702 states that a service provider "may divulge a record or other information pertaining to a subscriber . . . to any person other than a governmental entity."  <u>Id.</u> § 2702(c).  Accordingly, while the SCA prohibits the disclosure of customer lists to government entities absent the requisite process, it seemingly allows for the disclosure of the same information to other non-governmental entities like private publishers.  Whether such disclosure is in fact authorized by the SCA is a question we need not answer today, however, as the case before us concerns only the compelled disclosure of customer information to a governmental entity.

We need go no further.  In sum, we find that the SCA clearly prohibits communications providers from disclosing to the government basic subscriber information -- including a customer's name, address, and telephone number -- without a subpoena.  Because the Registry Act requires communications providers who sell prepaid phones in Puerto Rico to disclose their prepaid customers' names,

addresses, and phone numbers to a governmental entity without a subpoena -- or any process whatsoever -- the two acts directly conflict.  The Registry Act is thus preempted by the SCA, and the district court's order enjoining the enforcement of the Registry Act is affirmed.

## III.  Conclusion

We are not unsympathetic to the Puerto Rico government's desire to combat the exploitation of prepaid phones for criminal purposes.  No matter how worthy the objective, however, any such effort cannot run afoul of the clear language of federal law, which plainly forbids the disclosure of subscriber information to a governmental entity without a subpoena.

The judgment of the district court is thus affirmed.

**AFFIRMED.**

**APPENDIX**

AN ACT

To create a register of pre-paid telephone numbers, assigned to the Telecommunications Regulatory Board of Puerto Rico, to empower the Board to establish the relevant regulations and determine penalties, and for related purposes.

EXPLANATORY STATEMENT

The use of pre-paid mobile telephone units has emerged in Puerto Rico as the way to extort money from certain individuals. It is increasingly common for the media to point out that various individuals, using pre-paid cellular telephones extort people by deception, telling them they are going to kidnap or kill a family member, unless they provide a certain amount of money. It has come to light that many of these calls are made from the penal institutions of the country, using cellular telephones that have been smuggled into the prisons.

The problem is that the owners of these mobile units, because they are pre-paid, are not registered by the various companies, making it impossible for the authorities to track down their owners, if an incident of extortion occurs.

Indeed, many customers purchase this type of unit to avoid being tied to the contracts imposed by the cellular telephone companies or because they simply can specify the services they really need.

However, because of the widespread use of this type of device to commit crimes, it is imperative to provide the Telecommunications Regulatory Board of Puerto Rico with the power to create a register of pre-paid mobile units as a method of protection and security for all residents of this Island.

The Telecommunications Regulatory Board, an agency created by Act No. 213 of 1996, as amended, known as the "Puerto Rico Telecommunications Act of 1996," [Ley de Telecomunicaciones de Puerto Rico de 1996] is the government agency charged with regulating telecommunications services in Puerto Rico.

Recognizing that the provision of telecommunications service is intended to promote the public interest, within a competitive market, and that the Board has the power to regulate service providers in a manner consistent with their market position and the influence they have over consumers, this Legislature deems it appropriate to place the responsibility for this Act in the hands of the Telecommunications Regulatory Board.

Section 1. Creation

A register of pre-paid telephone numbers assigned to the Telecommunications Board is hereby created.

Section 2. Definitions

For purposes of this Act, the following terms shall have the meanings stated below:

(a) Board – The Telecommunications Regulatory Board of Puerto Rico, the agency charged with regulating telecommunications services in Puerto Rico, pursuant to the provisions of Act No. 213 of 1996, as amended, known as the "Puerto Rico Telecommunications Act of 1996."

(b) Telephone company – any natural or legal person that owns, controls, administers, operates, manages, supplies, or resells, in whole or part, directly or indirectly, any telephone service in Puerto Rico.

(c) Commercial Entities – any natural or legal person or business establishment, such as pharmacies, gas stations, department stores and supermarkets that sell pre-paid wireless telephones.

(d) Owner – the natural or legal person or company that owns or controls a prepaid mobile telephone unit.

(e) Pre-paid mobile telephone unit – any telephone or other equipment used to make telephone or computer communication via the cellular communications networks that has been assigned a telephone number to be activated through a telephone service provider; it includes interchangeable Subscriber Identification Modules (SIM, for its acronym in English) that serve to activate and connect the computer to a network, when they are assigned a telephone number, whether acquired jointly or separately from other equipment.

Section 3. Authorization and Powers of the Board

For purposes of the registration of pre-paid mobile telephone numbers to be created in accordance with Article II-6 of Act No. 213 of 1996, as amended, the Board shall have original jurisdiction over all telecommunications services and all persons providing these services within the Commonwealth of Puerto Rico and over any person with a direct or indirect interest in such services or companies. This shall include any business entity that sells pre-paid mobile telephones.

The Board is authorized and empowered to implement this Act and ensure full and strict compliance therewith.

The registration information to be created shall only be available to law enforcement agencies that request it, if they are

carrying out an investigation into the commission of a crime. The Board shall submit the information at no cost and upon submission of a police complaint or an order issued by a court with jurisdiction in Puerto Rico.

Section 4. Obligation to Regulate

Members of the Board shall enact, within a period of ninety (90) days after the passage of this Act, the regulations that are necessary to establish, among other things, all rules and standards relating to the effective enforcement of this Act. These Rules and Regulations shall be adopted in accordance with Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedure Act of the Commonwealth of Puerto Rico," [Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico] and, immediately after approval, shall be housed in the Department of State of Puerto Rico.

Section 5. Register of numbers of pre-paid mobile telephones; obligation to register the numbers falls on the Board

The Board is responsible for keeping and maintaining an up-to-date register of all telephone numbers of pre-paid mobile units sold in Puerto Rico, as provided for in this Act. The register to be kept in this agency shall include the name and the physical and postal address of the owner of the unit and an alternative telephone number, the number of the unit, its make, model, and serial number.

Every telephone company, natural or legal person, or business entity that sells a pre-paid mobile telephone unit shall require photo identification at the time of purchase and shall register with the Board the name and physical and postal address of the owner of the unit and an alternative telephone number, the number of the unit, its make, model, and serial number. Registration will take place within thirty (30) days of the acquisition of the unit. The procedures included in the regulations it adopts, as set forth in this Act.

Any telephone company that has sold pre-paid mobile telephone units prior to the effective period of this Act shall be required to submit to the Board a list of telephone numbers of these units, and any other information it has that is required for purposes of the register established under this Act, or which it may have acquired in the course of its business, within thirty (30) days following the date of entry into force hereof.

In the case of those persons, who upon approval of this Act, have in their possession a pre-paid mobile unit, a term not to exceed sixty (60) days is established to register the same with the Board. The Board is empowered to extend this period for up to sixty (60) additional days if it so deems fit.

Section 6. Duty to notify in case of change of address
It shall be the duty of every owner of a pre-paid mobile telephone unit to notify the Board of any change of address that takes place within thirty (30) days following same.

Section 7. Duty of notification in the case of a new owner
It shall be the duty of every natural or legal person to give notice to the Board if a prepaid mobile telephone unit, previously registered by a previous owner, has been acquired either through purchase or gift from another natural or legal person, within thirty (30) days following the acquisition.

Section 8. Penalties
Any telephone company, natural or legal person, or business entity that commits a violation of the provisions of this Act, shall commit an administrative offense, punishable by a fine of up to twenty-five thousand (25,000) dollars for each violation.

Article 9. Special Fund
The monies that are collected by way of administrative fines imposed under this Act or the regulations thereunder shall be paid into a Telecommunications Regulatory Board Special Fund, without being subject to the public policy contained in Act No. 230 of July 23, 1974, as amended, known as the "Puerto Rico Government Accounting Act" [Ley de Contabilidad del Gobierno de Puerto Rico].
The money paid into the Fund shall be transferred to the Board to be used to cover part of its operating, fiscal and administrative expenses in the implementation of this Act.

Article 10. Saving Clause
If any section, subsection, paragraph, subparagraph, clause, phrase or part of this Act is declared invalid or unconstitutional by a court of competent jurisdiction, the ruling to that effect shall not affect, impair or invalidate the remainder of this Act, its effects being limited only to the section, subsection, paragraph, subparagraph, clause, phrase or part of this Act so declared invalid or unconstitutional.

Article 11. Date of entry into force
This Act shall enter into force ninety (90) days after it has been passed.