T.C. Summary Opinion 2019-19

UNITED STATES TAX COURT

LILY HILDA SOLTANI-AMADI AND BAHMAN JUSTIN AMADI, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2090-18S.                    Filed August 8, 2019.

Lily Hilda Soltani-Amadi and Bahman Justin Amadi, pro sese.

<u>Monica E. Koch</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

For 2015 respondent determined a deficiency of $1,697 in petitioners' Federal income tax.  The issues for decision are:

(1) whether petitioners received, but failed to report, taxable income in the form of a distribution from a section 401(k) retirement plan; and, if so,

(2) whether petitioners are liable for the 10% additional tax under section 72(t) for an early distribution from that plan.

Background

Some of the facts have been stipulated, and they are so found.  The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in the State of New York when the petition was filed with the Court.

Petitioners are husband and wife.  In 2015, the taxable year in issue, they were both under 55 years of age.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2015, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

During 2015 petitioner Lily Hilda Soltani-Amadi worked for the State of New York. By virtue of her employment, Ms. Soltani-Amadi participated in a section 401(k) retirement plan established by the State for the exclusive benefit of its employees or their beneficiaries. The plan was both a qualified plan within the meaning of section 401(a) and exempt from income tax under section 501(a).

In 2015 petitioners entered into a contract to purchase their first home. In order to help finance the downpayment for its purchase, Ms. Soltani-Amadi requested a distribution from her section 401(k) retirement plan and, pursuant to her request, received a distribution of $6,686, which was used for the intended purpose. The purchase was consummated, and petitioners acquired the home.

Petitioners filed a joint income tax return for 2015. On their return they did not include in income the distribution from Ms. Soltani-Amadi's section 401(k) retirement plan, nor did they treat the distribution as an early distribution from a retirement plan or report additional tax pursuant to section 72(t).

Respondent examined petitioners' 2015 return and ultimately issued a notice of deficiency. The deficiency was attributable to (1) the $6,686 distribution from Ms. Soltani-Amadi's 401(k) plan and (2) a 10% additional tax on the distribution pursuant to section 72(t).

Petitioners responded to the notice of deficiency by timely filing a petition with the Court disputing the determined deficiency. In paragraph 5 of the petition, petitioners pleaded as follows:

> I, Lily Amadi, had to cash out my retirement money because we fell short for down payment of our house. I contacted [a] representative and asked them about cashing out early, and he said since we are first time home buyers, we won't be paying full penalty. I knew that we had to pay some tax on it, but not this much! We found our dream house, and we put all our savings into purchasing a house for our family. We were waiting for a letter from IRS, but not expecting to be fined so much, and other fees on top of that! The money that I had to cash out went to purchasing a house that we are paying very high taxes for. I wouldn't use my retirement money, if I could. I used it toward something that we needed for our growing family. We wanted to get a house after years of apartment living. I don't think we should pay tax on top of what we are paying, since we are paying taxes on our house.

Petitioners went on to make the following points in paragraph 6 of the petition:

> Penalties and fees are too high.
> We spent the money purchasing our very first house.
> Our house is a form of retirement money. The money went towards our house, which is like a saving for us when we get old!
> We just need a break. We have worked very hard and put ourselves through school. We could use a break.

## Discussion

A. Presumption of Correctness and Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that those

determinations are erroneous. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). However, in an unreported income case the Commissioner is obliged to introduce at least a minimal evidentiary foundation before the presumption of correctness will attach. <u>See, e.g.</u>, <u>Pittman v. Commissioner</u>, 100 F.3d 1308, 1316-1317 (7th Cir. 1996), <u>aff'g</u> T.C. Memo. 1995-243; <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977); <u>Rivas v. Commissioner</u>, T.C. Memo. 2016-158, at *9-*10. Such an evidentiary foundation exists in the present case, as the record clearly demonstrates that Ms. Soltani-Amadi was employed by the State of New York in 2015, participated in a section 401(k) retirement plan, and pursuant to her request, received a distribution of $6,686 from the plan in that year. Consequently, the presumption of correctness attaches to respondent's income determination.

In addition, section 7491(a) may serve to place the burden of proof on the Commissioner as to any factual issue relevant to ascertaining the taxpayer's liability if the taxpayer (1) introduces credible evidence with respect to that issue and (2) satisfies certain other requirements. However, although petitioners' testimony was credible, section 7491 does not apply because there is no dispute between the parties regarding any factual issue. In other words, the issues presented by this case are purely legal.

B.  Taxability of Section 401(k) Distributions

Gross income includes "all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.'" James v. United States, 366 U.S. 213, 219 (1961) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)); see sec. 61(a).  Gross income includes, but is not limited to, items such as compensation, annuities, income from life insurance and endowment contracts, and pensions.  Sec. 61(a)(1), (9), (10), (11).

Section 402 addresses the taxability of amounts distributed by an employees' trust.[2]  Subsection (a) of that section provides generally that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities)."  The section 401(k) retirement plan in which Ms. Soltani-Amadi participated was a qualified plan under section 401(a) and exempt from income tax under section 501(a), thereby making the amount actually

---

[2] As applicable to the present case, the employees' trust forms part of the sec. 401(k) retirement plan established by the State of New York for the benefit of its employees (such as Ms. Soltani-Amadi) or their beneficiaries.  See sec. 401(a), (k)(2); see also Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, para. 61.16 (Tax Exemption of Qualified Trusts) (Westlaw 2019).

distributed to Ms. Soltani-Amadi in 2015 (i.e., $6,686) taxable to her for that year pursuant to section 72.[3]  See sec. 402(a).

As a general rule, a distribution from a section 401(k) retirement plan is fully taxable pursuant to section 72 because the participant's contributions to the plan are made with "pre-tax dollars".[4]  Weaver-Adams v. Commissioner, T.C. Memo. 2014-73, at *5; see sec. 1.401(k)-1(a)(4)(iii), Income Tax Regs. Accordingly, the $6,686 distribution that Ms. Soltani-Amadai received from her section 401(k) retirement plan is includible in income in its entirety.  See Robertson v. Commissioner, T.C. Memo. 2014-143, at *5, aff'd per curiam, 619 F. App'x 261 (4th Cir. 2015); see also Weaver-Adams v. Commissioner, at *4-*5.

---

[3]  Petitioners should understand that it is the employees' trust (i.e., the entity) that is exempt from income tax under sec. 501(a), and not the beneficiaries of the employees' trust (i.e., the participating employees).  Rather, as discussed in the text above, the taxability of the beneficiaries is addressed by sec. 402.

[4]  Sec. 72(a)(1) provides generally that gross income includes any amount received as an annuity under an annuity, endowment, or life insurance contract, unless otherwise provided.  But see sec. 72(b) (providing an exclusion from gross income, but limiting it to the taxpayer's investment in the contract).

If any amount is not received as an annuity but is nevertheless received under an annuity, endowment, or life insurance contract, sec. 72(e) provides generally that such an amount, if received before the annuity starting date, is includible in gross income, except to the extent allocable to the taxpayer's investment in the contract.  Sec. 72(e)(2)(B).

As stated, a participant in a sec. 401(k) retirement plan generally has no "investment in the contract" because the participant's contributions to the plan are made with "pre-tax dollars".

Petitioners do not dispute that Ms. Soltani-Amadi received a distribution of $6,686 in 2015 from her section 401(k) retirement plan. Further, petitioners acknowledged in their petition and at trial that they knew they had to pay some tax on the distribution although they did not report any part of the distribution on their 2015 return. Nevertheless, petitioners request relief, contending that they had been informed that there would be little to no tax when they "cash[ed] out, but * * * [they would] have to present * * * [their] case". Regardless of the advice received, the law is clear--the distribution Ms. Soltani-Amadi received in 2015 from her section 401(k) retirement plan is taxable and must be included in its entirety in petitioners' taxable income for 2015. Secs. 402(a), 72(a), (e).

C. Section 72(t)

We turn now to the principal issue in this case; namely, whether petitioners are liable for the 10% additional tax under section 72 on the $6,686 distribution Ms. Soltani-Amadi received from her section 401(k) retirement plan.

Section 72(t)(1) imposes a 10% additional tax on an early distribution from a qualified retirement plan. A qualified retirement plan, which is defined in section 4974(c), includes an individual retirement account described in section 408(a) and an individual retirement annuity described in section 408(b), see sec. 4974(c)(4) and (5), as well as a plan described in section 401(a) which includes a

trust exempt from tax under section 501(a), see sec. 4974(c)(1). Thus, the section 401(k) retirement plan established by the State of New York for the benefit of its employees such as Ms. Soltani-Amadi constitutes a qualified retirement plan, distributions from which are potentially subject to the imposition of tax pursuant to section 72(t)(1).

Section 72(t)(2) excepts from the 10% additional tax certain distributions. Among them are: distributions made to an employee after separation from service after attaining the age of 55, sec. 72(t)(2)(A)(v), distributions from individual retirement plans for certain higher education expenses, sec. 72(t)(2)(E), and distributions from individual retirement plans for first home purchases, sec. 72(t)(2)(F).

Petitioners contend that the distribution Ms. Soltani-Amadi received from her section 401(k) retirement plan is excepted from the 10% additional tax because they used it to help finance the purchase of their first home. See sec. 72(t)(2)(F). Respondent readily admits that the distribution was used for that purpose but contends that petitioners do not qualify for the exception for a highly technical reason, namely, because the distribution was from a section 401(k) retirement plan, as opposed to an individual retirement account or individual retirement annuity.

To resolve the parties' dispute the Court begins with a bit of history. Congress enacted section 72(t) to discourage individuals from taking premature distributions from qualified retirement plans. See Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); S. Rept. No. 93-383, at 134 (1974), 1974-3 (Supp.) C.B. 80, 213. "Premature distributions from IRAs frustrate the intention of saving for retirement, and section 72(t) discourages this from happening." Dwyer v. Commissioner, 106 T.C. at 340. Accordingly, section 72(t)(1) was enacted to impose an additional tax of 10% on the portion of a distribution from a qualified retirement plan that is includible in gross income, unless the distribution is specifically excepted from the tax. H. R. Conf. Rept. No. 93-1280, at 339 (1974), 1974-3 C.B. 415, 500. Notably, for purposes of the additional tax, a qualified retirement plan includes both a section 401(k) retirement plan and an individual retirement account or individual retirement annuity. See secs. 401(a), (k)(1), 408(a) and (b), 4974(c)(1), (4), (5).

As part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, secs. 203, 303, 111 Stat. at 809, 829, Congress enacted two additional exceptions to the 10% additional tax: distributions for higher education expenses and distributions for first home purchases. Sec. 72(t)(2)(E) and (F). Of paramount importance is the fact that these two exceptions are available only if the distribution for the specified

purpose comes from an "individual retirement plan", as defined and discussed below.

To decide whether petitioners qualify for the first home purchase exception to the 10% additional tax, the statute itself must first be consulted, pertinent parts of which read as follows:

> SEC. 72(t). 10-Percent Additional Tax On Early Distributions * * *.--
>
> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax * * * for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.
>
> (2) Subsection not to apply to certain distributions.-- * * * [P]aragraph (1) shall not apply to any of the following distributions:
>
> *     *     *     *     *     *     *
>
> (F) Distributions from <u>certain</u> plans for first home purchases.--Distributions to an individual from an <u>individual retirement plan</u> which are qualified first-time homebuyer distributions * * * [Emphasis added.]

The Court's role in a case such as the present one is "to interpret the language of the statute enacted by Congress." <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 461 (2002). As the Supreme Court stated in yet another case: "[C]ourts

must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-254 (1992). And as this Court has stated: "When construing a statute, '[i]t is our duty "to give effect, if possible, to every clause and word"' so as to avoid rendering any part of the statute meaningless surplusage." 15 W. 17th St. LLC v. Commissioner, 147 T.C. 557, 586 (2016) (quoting United States v. Menasche, 348 U.S. 528, 538-539 (1955)) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 171 (1803) (enunciating "anti-surplusage" canon of construction)).

With the foregoing principles in mind, we turn to section 72(t)(2)(F) and begin with its title: "Distributions from certain plans for first home purchases." Although statutory titles and section headings do not define a statute's meaning and are not generally relied on at the expense of the statutory text itself, such titles and headings "'are tools available for the resolution of a doubt' about the meaning of a statute." Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998) (quoting Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 528-529 (1947)); see Telecomms. Regulatory Bd. of P.R. v. CTIA--Wireless Ass'n, 752 F.3d 60, 65 (1st Cir. 2014); see also Caltex Oil Venture v. Commissioner, 138 T.C. 18, 28 n.10 (2012); cf. sec. 7806(b). The use of the adjective "certain" in the title of section 72(t)(2)(F)--"Distributions from certain plans for first home

purchases"--suggests that the subparagraph excepts from the 10% additional tax distributions from some, but not all, qualified retirement plans. But neither the title of section 72(t)(2)(F) nor the text of the section itself tells us which individual retirement plans come within the scope of the exception and which do not.

Moving on to the section itself, it is clear that the exception applies only to distributions from individual retirement plans. The term "individual retirement plan" is not defined in section 72. However, section 7701(a)(37) provides a definition that is generally applicable throughout title 26, i.e., the Internal Revenue Code. That section provides that the term "individual retirement plan" means: (A) an individual retirement account described in section 408(a), and (B) an individual retirement annuity described in section 408(b). The definitions describing those types of accounts in section 408(a) and (b) apply only to individual retirement accounts and annuities (collectively, IRAs) and not to other types of retirement plans, such as section 401(k) retirement plans. See Uscinski v. Commissioner, T.C. Memo. 2005-124.

As has already been discussed, section 72(t)(1) serves to impose the 10% additional tax on "qualified retirement plans" as defined in section 4974(c), and such plans include both section 401(k) retirement plans and IRAs. In stark contrast, the first home purchaser exception in section 72(t)(2)(F) applies only to

an "individual retirement plan", a term which (as just discussed) includes only IRAs. And also, as just discussed, an IRA is not a section 401(k) retirement plan. Uscinski v. Commissioner, T.C. Memo. 2005-124.

In light of the above discussion, there is no need to resort to legislative history to ascertain the meaning of the statute. But even if the Court were to do so, legislative history supports the conclusion that the first home purchase exception applies only to distributions from IRAs because when section 72(t)(2)(F) was enacted, mention was made only of IRAs as coming within the exception afforded by that section. See generally H.R. Rept. No. 105-148, at 289-290 (1997), 1997-4 C.B. (Vol. 1) 319, 611-612.

In sum, Ms. Soltani-Amadi received a distribution from a type of retirement plan that is not excepted from the 10% additional tax imposed by section 72(t)(1). The Court is therefore constrained to sustain respondent's determination that petitioners are liable for the additional tax.

In closing, Congress chose to grant relief under section 72(t)(2)(F) for distributions from IRAs but not for distributions from other qualified plans, such as a section 401(k) retirement plan. Although the Court found petitioners to be sincere, credible, and earnest, the fact remains that the Court is a court of limited jurisdiction and lacks general equitable powers. Commissioner v. McCoy, 484

U.S. 3, 7 (1987).  Thus, the Court is constrained by the text of the statute and may not act contrary to it.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.