**STATE ex rel. John ASHCROFT, Attorney General, Respondent,**

v.

**Max GOLDBERG d/b/a Universal Industries, Appellant.**

**No. 61667.**

Supreme Court of Missouri, En Banc.

Nov. 12, 1980.

Rehearing Denied Dec. 15, 1980.

---

Ronald Borgmann, St. Louis, for appellant.

John Ashcroft, Atty. Gen., William Newcomb, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

This case involves certain aspects of Chapter 407 of the statutory law of this state which clearly was designed to aid in the discovery and prevention of fraudulent and deceptive practices in the advertisement and sale of any merchandise described in § 407.010(4).

Respondent, the Attorney General of Missouri, pursuant to the provisions of § 407.-040 caused a Civil Investigative Demand (hereinafter a CID)[1] to be served upon ap-

---

1. We quote the following therefrom: "We have reports that Universal Industries has: A. Mis- represented that no selling was required to operate a successful Universal Industries distribu-

pellant, Max Goldberg, doing business as Universal Industries, with the allegation that the office had reason to believe that appellant was using deceptive trade practices, as defined in § 407.020, in connection with the sale of franchises for the vending of hot foods and drinks. Material requested was "to be delivered" to an office of the respondent in the City of St. Louis.

Appellant failed to comply and respondent thereafter filed a petition in the trial court, pursuant to § 407.090, seeking an "order" of enforcement. Appellant filed a Motion to Dismiss and an Answer to the petition. After a hearing, the trial court overruled appellant's motion and sustained respondent's Motion For Judgment On The Pleadings and by order called for compliance with the CID. After an appeal to the Court of Appeals, Eastern District, the cause was transferred to this Court upon motion of respondent.

Prior to considering those arguments carried forward by appellant, we note two specific provisions of Chapter 407 which simplify our task. (1) § 407.040, which actually authorizes service of a CID, provides that: "... this section shall not be applicable to criminal proceedings," and we find no conflict therein with § 407.080. (2) The latter section declares certain subsequent conduct of a recipient of a CID to constitute a misdemeanor, i. e., when he "... removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies any information, documentary material, or physical evidence in the possession, custody or control of any person...."

There is no suggestion that appellant's conduct is that condemned in § 407.080; or that the "protective" provision of § 407.040, heretofore quoted, would not apply in any event to everything revealed in response to a CID.

First, it is submitted that the entire Act is unconstitutional because the appellate procedure called for is repugnant to the limited jurisdiction of this Court as delineated in § 3 of Article V of the Missouri Constitution, as amended effective August 3, 1976. Section 407.090 does provide that: "Any final order so entered shall be subject to appeal to the state supreme court." Appellant's argument reference the appellate procedure has merit. Respondent agrees but hastens to add that the questioned statutory provisions were enacted in 1967 at a time when § 3 of Article V placed jurisdiction in this Court of "all civil cases where the state ... is a party" or "any state officer as such is a party." Nevertheless, this cause was once in the Court of Appeals and having been transferred we retain and decide the same under constitutional provisions for transfers and the need for adjudication at this level. *State v. Clark*, 494 S.W.2d 26 (Mo.banc 1973); *Foremost– McKesson, Inc. v. Davis*, 488 S.W.2d 193 (Mo.banc 1972). It does not follow that Chapter 407 is unconstitutional because the appellate procedure designated therein has by constitutional change become obsolete. As suggested by respondent, the substantive provisions of the law are so clearly severable from the challenged procedure for appeal that all requirements of § 1.140, pertaining to "severability of statute provisions," are satisfied. The point is ruled against appellant.

Second, appellant asserts that the CID is void on its face by calling for production of documents and materials at respondent's office contrary to § 407.050, which says that material requested "shall be produced during normal business hours at the principal office or place of business of the person served, or at such other times and places as may be agreed upon by the person served and the attorney general." Respondent counters with the provision in § 407.040 that material requested is to be

torship. B. Misrepresented the amount of money that could be earned by the operation of a ... distributorship. C. Misrepresented that a distributorship purchased from Max Goldberg, d/b/a Universal Industries, guaranteed the buyer an exclusive territory." Thereafter, five questions were posed as to the names and addresses of persons dealing with appellant and a request for copies of advertisements used during the preceding three months.

available "at such reasonable time and place as may be stated in the investigative demand ...." Apparently each section was amended in 1973 and the conflicting language, again, should be of legislative interest; however, for our immediate task, it is sufficient to say that appellant failed to make an effort "to modify or set aside the demand" as authorized by § 407.070 and, thus, has waived such a minor discrepancy. *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362[5–6] (Mo. App.1973).

■ Third, appellant submits that summary judgment was not appropriate after a denial of improper conduct was filed by answer. We agree with respondent that the "denial" was not relevant to appellant's amenability to service as the CID is factually predicated upon a belief by the Attorney General that "a person has engaged in or is engaging in any act or practice declared to be unlawful ...." As said in the *Danforth* case, *supra*, at 366: "The purpose of the Civil Investigative Demand procedure is to provide a form of pretrial discovery for the benefit of the attorney general. A comparison of the provisions of § 407.040, which creates this new procedure, with the Federal Antitrust Civil Process Act, 15 U.S.C.A. § 1312, reveals that our new Civil Investigative Demand proceeding is patterned after the parallel provisions of the Federal procedure which is also entitled 'Civil Investigative Demand'. The new procedure under § 407.040 is also similar to the pretrial discovery opportunities given to the Missouri Attorney General in antitrust cases under § 416.300, R.S.Mo. 1969, V.A.M.S."

■ Lastly, it is alleged that the entire statutory scheme violates those standards pertaining to unreasonable search and seizure, self–incrimination, due process and equal protection. All must be rejected as indicated by the following authorities. In *Lewandowski v. Danforth*, 547 S.W.2d 470 (banc 1977), this Court considered the constitutionality of § 407.040 and while upholding the same said, at 472:

Before considering the challenges to § 407.040, supra, which authorizes the Attorney General of this State to issue a CID, we note the similarity of § 407.040 to procedures in the Federal Antitrust Civil Process Act found codified at 15 U.S.C.A. § 1312. Since the Missouri CID statute has received virtually no judicial attention, the best available authority on the subject consists of federal decisions which have construed and applied the provisions of the Federal Antitrust Civil Process Act. (In *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W. 362, 363 (Mo.App.1973), Judge Wasserstrom noted the parallel between the federal and state laws but did not find it necessary to rule on the authority and scope of a CID). *See generally*, Annot. 10 A.L.R.Fed. 677; von Kalinowski, *Antitrust Laws and Trade Regulations*, Vol. 16L, § 93 (1976).

Appellants allege in a vague and indefinite fashion that the CID procedure denies them due process of law. An examination of § 407.040 and § 407.070 reveals that persons served with a CID are fully afforded the protection of procedural due process. In *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) the Supreme Court said:

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' *Baldwin v. Hale*, 1 Wall. 223, 233, 68 U.S. 223, 233, 17 L.Ed. 531, 534. See *Windsor v. McVeigh*, 93 U.S. 274, 23 L.Ed. 914; *Hovey v. Elliot*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215; *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363. It is equally fundamental that the right to notice and opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66."

Moreover, due process is not a static or rigid concept. As recognized in *Stanley v. Illinois*, 405 U.S. 645, 650, 92 S.Ct. 1208,

1212, 31 L.Ed.2d 551 (1972), "due process of law does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). That case explained that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' and firmly established that 'what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Id., at 895, 81 S.Ct., at 1745 [6 L.Ed.2d at 1236]; *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970)."

Although in this instance the government function involved, that of investigation of suspect merchandising practices, is one of considerable importance to the general public, the legislature has not bestowed unbridled authority upon the Attorney General to pursue this mission at the expense of any individual's entitlement to procedural due process.

It would appear that the recent opinion of the United States Supreme Court in *United States v. L. O. Ward d/b/a L. O. Ward Oil and Gas Operations*, —— U.S. ——, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) is dispositive of all issues. Therein, enforcement of the Federal Water Pollution Control Act was involved wherein reporting of offenses by violators was required with a comparable "use immunity" provision. The Court said:

The distinction between a civil penalty and a criminal penalty is of some constitutional import. The Self–Incrimination Clause of the Fifth Amendment, for example, is expressly limited to "any criminal case...." Similarly, the protections provided by the Sixth Amendment are available only in "criminal prosecutions...." Other constitutional protections, while not explicitly limited to one context or the other, have been so limited by decision of this Court.

Finding no error, the judgment of the trial court should be affirmed and it is so ordered.

BARDGETT, C. J., and DONNELLY, RENDLEN, SEILER and HIGGINS, JJ., concur.

WELLIVER, J., dissents.