

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. | ) | |
| ATTORNEY GENERAL CHRIS | ) | |
| KOSTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78258 |
| | ) | |
| | ) | OPINION FILED: |
| CHARTER COMMUNICATIONS, INC., | ) | May 26, 2015 |
| d/b/a CHARTER COMMUNICATIONS; | ) | |
| CHARTER FIBERLINK-MISSOURI, | ) | |
| LLC; and CHARTER ADVANCED | ) | |
| SERVICES (MO) LLC, | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Patricia S. Joyce, Judge**

**Before Division III:** Mark D. Pfeiffer, Presiding Judge, and
Gary D. Witt and Anthony Rex Gabbert, Judges

Appellant-Relator, Missouri Attorney General Chris Koster ("the AG"), appeals the

judgment of the Circuit Court of Cole County, Missouri ("trial court"), declaring that the Civil

Investigative Demands ("CIDs") issued to Respondents by the AG were not authorized by the

Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.* ("ECPA"), and were thus not

enforceable. Because we conclude that the CIDs were "administrative subpoenas" contemplated

by the ECPA and did not violate Respondents' constitutional rights of privacy, we reverse the judgment of the trial court and enter the judgment the trial court should have entered.

**Factual and Procedural Background**

The salient facts of this case are not in dispute. They are as follows:

One of the responsibilities of the AG is investigating and prosecuting violations of Missouri's consumer protection statutes, Chapter 407 of the Revised Statutes of Missouri, including the Missouri Telemarketing Law (§§ 407.1070 *et seq.*) and Missouri's No-Call Law (§§ 407.1095 *et seq.*). In furtherance of these investigations, the AG is authorized to issue CIDs pursuant to section 407.040.

Respondents Charter Communications, Inc.; Charter Fiberlink-Missouri, LLC; and Charter Advanced Services (MO), LLC, are for-profit companies wholly owned by Charter Communications Holdings, LLC, an active Delaware corporation (collectively, "Charter"). Among other things, Charter provides telephone and voice-over-internet-protocol service to residential and commercial customers in the State of Missouri.

On June 12, 2014, the AG's office served Charter with CID number 039-14JG ("the June CID"). The June CID sought information and documentation regarding one of Charter's customers which was suspected of having violated Missouri's no-call and telemarketing laws. On July 29, 2014, the AG's office sent CID number 059bb-14JK ("the July CID") to Charter. The July CID stated that an unknown Charter customer was suspected of having violated Missouri's telemarketing laws and requested information and documentation designed to investigate such Charter customer. Invoking protections pursuant to the ECPA and article I,

section 15 of the Missouri Constitution, Charter refused to produce the information and documentation sought by the AG's CIDs.[1]

The AG's office filed a petition seeking declaratory relief in the form of a judgment stating that the CIDs were "administrative subpoenas" for purposes of the ECPA and that nothing in article 1, section 15 precluded the AG from obtaining the requested information and documentation requested in the June and July CIDs. The petition further requested the trial court to order Charter to respond to both CIDs pursuant to section 407.090.

The parties agreed that the pertinent facts were not in dispute and filed dueling motions for judgment on the pleadings. After briefing and argument, the trial court issued its judgment in favor of Charter, thereby refusing to enforce the AG's CIDs. This appeal follows.

## Standard of Review

The trial court's judgment on the pleadings addresses only issues of law. Accordingly, our review is *de novo* and without deference to the trial court's judgment. *State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272, 274 (Mo. App. W.D. 2010).

## Analysis

The AG asserts three interrelated points on appeal, which we discuss together for ease of discussion.

---

[1] The parties agree that the information sought was both "non-content" and "basic subscriber information." "Non-content" electronic data and information, which is governed by § 2703(c) of the ECPA, should be understood in contrast with "content" electronic information and data, which is governed by § 2703(b) of the ECPA. "Content" information would include, for example, the substantive contents of an email, phone call, etc. "Non-content" information would be any other electronic information and data about a call or an email—the phone number that was dialed, the length of the call, the time of the email, etc. This case concerns "non-content" information only, and so is governed by § 2703(c). "Basic subscriber information" is that information expressly itemized by § 2703(c)(2) and subject to production pursuant to, for example and relevant to this appeal, an "administrative subpoena authorized by a Federal or State statute." Originally, the AG's CIDs had sought information argued by Charter to be outside of the "basic subscriber information" contemplated by § 2703(c)(2), but the AG agreed to remove such requests and Charter agrees that the information presently sought by the AG's CIDs constitutes "basic subscriber information." Our ruling today is limited to a discussion of the application of the ECPA to CIDs constituting "non-content" requests that only seek "basic subscriber information" as contemplated by § 2703(c) of the ECPA.

3

## I. Civil Investigative Demands as Administrative Subpoenas

The ECPA generally prohibits providers of electronic communications services from disclosing any information about its customers or their electronic communications. Conversely, pursuant to the ECPA, a governmental entity may require a provider of electronic communications to divulge its customers' non-content[2] "record[s] or other information pertaining to [that] subscriber . . . or customer[.]" 18 U.S.C. § 2703(c). These requests are limited to certain types of process. *Id.* Section 2703(c) differentiates between two types of non-content information. The first category of non-content information (which is relevant to this appeal) is often referred to as "basic subscriber information"[3] and is limited to the customer's:

> (A) name;
>
> (B) address;
>
> (C) local and long distance telephone connection records, or records of session times and durations;
>
> (D) length of service (including start date) and types of service utilized;
>
> (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
>
> (F) means and source of payment for such service (including any credit card or bank account number)[.]

18 U.S.C. § 2703(c)(2). The governmental entity, here the AG, can only obtain basic subscriber information via one of the following ways:

> (1) " an *administrative subpoena authorized by a Federal or State statute*,"
>
> (2) "a Federal or State grand jury or trial subpoena,"
>
> (3) "a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction,"

---

[2] *See* n.1, *supra.*
[3] *See* n.1, *supra.*

(4) "a court order for such disclosure under [§ 2703(d)],"

(5) "the consent of the subscriber or customer to such disclosure," or

(6) "a formal written request relevant to a law enforcement investigation concerning telemarketing fraud [but limited to information identifying] the name, address, and place of business of a subscriber or customer of such provider [.]"

18 U.S.C. § 2703(c)(1)-(2) (emphasis added).

Most often, § 2703 is used when law enforcement is attempting to investigate criminal offenses, and it was clearly written with criminal investigations in mind. *See Federal Trade Comm'n v. Netscape Commc'ns Corp.*, 196 F.R.D. 559, 560 (N.D. Cal. 2000). However, courts have found that it also encompasses a governmental entity's ability to obtain information regarding electronic communications in civil cases, *id.*, and the plain language of § 2703(c) is broad enough to support its application in both criminal and civil matters. *See also Telecomms. Regulatory Bd. of Puerto Rico v. CTIA-The Wireless Ass'n*, 752 F.3d 60, 65-67 (1st Cir. 2014).

Given the procedural posture of this case, the only relevant disclosure process is via "administrative subpoena." We therefore turn our analysis to the nature and origin of the CID and whether it constitutes an administrative subpoena.

Section 407.040 allows the AG to issue CIDs in its investigation of possible violations of the Missouri Merchandising Practices Act, including the Telemarketing Law and the No-Call Law. It provides, in part:

When it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solicitation declared to be unlawful by this chapter or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any such method, act, use, practice or solicitation, he may execute in writing and cause to be served upon any person who is believed to have information, documentary material, or physical evidence relevant to the alleged or suspected violation, a civil investigative demand requiring such person to appear and testify, or to produce relevant documentary material or physical evidence . . . . Service of any civil investigative demand, notice, or subpoena may

5

be made by any person authorized by law to serve process or by any duly authorized employee of the attorney general.

§ 407.040.1. Section 407.1107, which is part of the No-Call Law, also provides that "[t]he attorney general may issue investigative demands, issue subpoenas, administer oaths and conduct hearings in the course of investigating a violation" of the No-Call Law. § 407.1107.1.

The Missouri Supreme Court has held that Missouri's CID proceeding "is patterned after the parallel provisions" of the federal proceedings set forth in the Federal Antitrust Civil Process Act, 15 U.S.C. § 1312; this federal procedure is, notably, also labeled "Civil Investigative Demand." *Ashcroft v. Goldberg*, 608 S.W.2d 385, 388 (Mo. banc 1980). *Goldberg* also dictates that "[s]ince the Missouri CID statute has received virtually no judicial attention, the best available authority on the subject consists of federal decisions which have construed and applied the provisions of the Federal Antitrust Civil Process Act." *Id.*

The United States District Court for the District of Minnesota analyzed the Federal Antitrust Civil Process CID as an administrative subpoena, calling it "an innovation in the civil investigative powers of the Attorney General." *Petition of Gold Bond Stamp Co.*, 221 F.Supp. 391, 395-96 (D. Minn. 1963). The Utah Court of Appeals, citing *Gold Bond Stamp*, analyzed its CID process similarly. *Brixen & Christopher Architects v. State*, 29 P.3d 650, 656-57 (Utah Ct. App. 2001); *see also id.* at 664 (Davis, J., dissenting) ("CIDs are a method by which the attorney general may compel an individual or corporation to provide 'information relevant to a civil antitrust investigation.' . . . Thus, CIDs are essentially administrative subpoenas issued by the attorney general."). The Supreme Court of Colorado analyzed a CID provision found in the Colorado Organized Crime Control Act, which itself was patterned after the Federal Antitrust Civil Process Act, as an administrative subpoena. *See Benson v. People*, 703 P.2d 1274, 1277-78 n.5 & 1278-79 (Colo. banc 1985). And, although applying the CID provisions of the Federal False Claims Act, 31 U.S.C. §§ 3279-33, rather than those of the Federal Antitrust Civil Process

6

Act, the Sixth Circuit, in *United States v. Markwood*, 48 F.3d 969, 974 n.4 (6th Cir. 1995), stated, "Although here we have used the term 'CID' without explanation, we believe it is a type of administrative subpoena. Because everyone involved in this litigation uses the term, we will use CID and administrative subpoena interchangeably." Finally, the D.C. Circuit, applying the CID provision of the Federal Trade Commission Act, 15 U.S.C. § 57b-1(c)(1), analyzed the CIDs as administrative subpoenas. *Fed. Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1087-91 (D.C. Cir. 1992).

These cases' analyses of CIDs as administrative subpoenas comports with the purpose of section 407.040 CIDs. They "provide a form of pretrial discovery for the benefit of the attorney general." *Goldberg*, 608 S.W.2d at 388. Also, although the AG's office is not an administrative agency, when issuing CIDs under section 407.040, the AG is performing an administrative function. It is the functional equivalent of a civil enforcement agency enforcing the civil consumer protection laws of Missouri. While performing this administrative function, similar to administrative agencies, the AG, under the No-Call Law, is permitted to "issue investigative demands, issue subpoenas, administer oaths and conduct hearings." § 407.1107.1. And also like an administrative agency, the AG is granted "the authority to promulgate . . . all rules necessary to the administration and enforcement of the provisions of [the Merchandising Practices Act]." § 407.145. *See also Brixen*, 29 P.3d at 659 (under a virtually identical CID statutory scheme, attorney general of Utah treated as administrative agency).

Moreover, compliance with section 407.040 CIDs is obtained in the same manner as historically provided for administrative subpoenas. When discussing enforcement of CIDs, which the court also calls administrative subpoenas, under the Federal Trade Commission Act, the D.C. Circuit stated, "The agency, in issuing a[n administrative] subpoena, has undertaken no final administrative action; a[n administrative] subpoena becomes an appealable final order only

7

after the subpoenaed party refuses to comply and the agency requests and receives judicial enforcement." *Invention Submission Corp.*, 965 F.2d at 1089. The same is true of CIDs under section 407.040. The CIDs are not independently enforceable. If the recipient refuses to comply with the CID, the AG may seek to have the court order compliance pursuant to section 407.090. Thus in purpose and function, chapter 407 CIDs are the same as administrative subpoenas. Accordingly, for purposes of the ECPA, we conclude that the CIDs issued by the AG are administrative subpoenas.[4]

## II. Constitutional Limitations on Civil Investigative Demands

Charter argues that, even if CIDs are deemed to be administrative subpoenas, and thus their enforcement is not limited by the ECPA, they should not be enforced because they violate article I, section 15 of the Missouri Constitution. Article I, section 15, is the Missouri equivalent of the Fourth Amendment to the United States Constitution. It was amended in 2014, and presently provides:

> [t]hat the people shall be secure in their persons, papers, homes, effects, and electronic communications and data, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, or access any electronic data or communication, shall issue without describing the place to be searched, or the person or thing to be seized, or the data or communication to be accessed, as nearly as may be; nor without probable cause, supported by written oath or affirmation.

MO. CONST. art. I, § 15. The recent amendments to this provision added the express restrictions on issuance of warrants to "access any electronic data or communication" without probable

---

[4] Charter notes that section 407.040.3 dictates that no CID shall "[c]ontain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this state" and cites *Brixen & Christopher Architects v. State*, 29 P.3d 650 (Utah Ct. App. 2001). We note two things about *Brixen*. First, the court analyzed the CIDs in question as administrative subpoenas. Second, though the Utah court was discussing the CIDs in relationship to standards applied to subpoenas duces tecum, it was doing so in the context of determining whether the information sought in the CIDs was sufficiently relevant and reasonable to satisfy the constraints on administrative subpoenas imposed by the Fourth Amendment. *Id.* at 663-64. Frankly, we agree with both premises of the *Brixen* court; namely, that CIDs are administrative subpoenas, and that the information sought in the CIDs must still comply with due process principles outlined by the Fourth Amendment to the United States Constitution and, in our case, as applied to the State of Missouri via article I, section 15 of the Missouri Constitution. As we discuss next in our ruling, the AG's CIDs do, in fact, pass constitutional muster.

8

cause supported by written oath or affirmation. So, in this respect, article I, section 15 differs from the Fourth Amendment. However, courts have long already interpreted the Fourth Amendment's protections as covering electronic communications and data in addition to "persons, houses, papers, and effects." *See, e.g., Katz v. United States*, 389 U.S. 347, 353 (1967) ("The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment."); *State v. Faruqi*, 344 S.W.3d 193, 204-05 (Mo. banc 2011) (computer data analyzed under the Fourth Amendment, but the employee had no reasonable expectation of privacy in a computer owned by his employer). Because the Fourth Amendment is already being interpreted to protect electronic communications and data, we conclude that article I, section 15, even as amended, is not currently measurably more restrictive on the government than is the Fourth Amendment.

Charter argues that it has a constitutionally protected interest in the "private information and data" that it keeps, including its business records regarding its customers' communications. We agree that Charter's business records may be considered "papers" protected by the Fourth Amendment. *See Patel v. City of Los Angeles*, 738 F.3d 1058, 1061-62 (9th Cir. 2013). We also agree that the AG's issuance of the CIDs, if enforced, would constitute a search of Charter's records. "The question we must next decide is whether the search[] authorized by [section 407.040 is] reasonable. Ordinarily, to answer that question, we would balance the need to search against the invasion which the search entails." *Id.* at 1063 (internal quotation omitted). Unlike a police search in a criminal investigation, which might require a warrant supported by probable cause, "[t]he Supreme Court has made clear that, to be reasonable, an *administrative record-inspection* scheme need not require issuance of a search warrant, but it must at a minimum afford an opportunity for pre-compliance judicial review." *Id.* (emphasis added). The

9

CID procedure at issue provides just such an opportunity. Once a CID is served, the recipient has until the return date specified in the CID, up to twenty days, to file a petition to modify or set aside the CID. § 407.070. In such a petition, the recipient may state its objections to the CID, and why it believes that the CID is unreasonable.[5]

In addition to the requirement that there be some mechanism for the recipient of an administrative investigative demand to be able to seek pre-compliance judicial review, the Fourth Amendment's reasonableness requirement mandates that: (1) the investigative demand comply with the statute authorizing it, *Benson v. People*, 703 P.2d 1274, 1278 (Colo. banc 1985); (2) the information sought is relevant to the administrative inquiry, *id.*; and (3) the investigative demand is not too indefinite or too broad, *United States v. Golden Valley Electric*, 689 F.3d 1108, 1113 (9th Cir. 2012). In this case, the AG agreed to accept only the basic subscriber information regarding the Charter subscribers that would be available to the AG under the "administrative subpoena" exception of the ECPA. In addition, the CIDs informed Charter of what civil provisions the Charter customers were being investigated of having violated, and there is nothing in the record demonstrating that the AG's demands were unduly broad, overly burdensome, or irrelevant.[6] Accordingly, we conclude that neither the Fourth Amendment to the United States Constitution nor article I, section 15 of the Missouri Constitution prohibits enforcement of the CIDs issued by the AG.

---

[5] Here, Charter did not utilize section 407.070 to challenge the CIDs. However, it did contact the AG's office to let it know that it would not comply with the CIDs; the two parties also met to negotiate a solution even though an agreement was not reached. Because the AG's office participated in the negotiations with Charter, the trial court permitted Charter to assert its defenses to the CIDs out of time in its answer to the AG's petition under section 407.090. We conclude that it was not an abuse of the trial court's discretion to allow Charter to assert its defenses in this manner. That said, the prescribed and preferable method for recipients of CIDs to lodge objections to CIDs is to follow the statutory scheme outlined by section 407.070.

[6] Charter alternatively argues on appeal that a warrant and probable cause are necessary in addition to the CIDs because Charter's *subscribers* may ultimately be subject to civil monetary penalties associated with violations of Missouri's No-Call and Telemarketing laws. Resp. Br. 34. However, *Charter* is not accused or suspected of violating any laws; rather, it is Charter's *subscribers* that are being investigated. Thus, Charter simply does not have standing to assert Fourth Amendment electronic privacy interests that belong to Charter's *subscribers*—not to *Charter*. *United States v. Golden Valley Electric*, 689 F.3d 1108, 1116 (9th Cir. 2012).

10

The AG's appeal is granted.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court. "[W]hen a trial court fails to make a [correct] declaration settling rights, . . . a reviewing court may, in its discretion, make the declaration that should have been made." *Vowell v. Kander*, 451 S.W.3d 267, 272 (Mo. App. W.D. 2014) (citing *Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988)). *See also* Rule 84.14 (Appellate courts are authorized to issue "such judgment as the court ought to give. Unless justice otherwise requires, the [appellate] court shall dispose finally of the case."). Here, where the parties do not dispute the salient facts and Charter's defenses have been fully addressed and rejected by our ruling today, we exercise our discretion to enter the judgment that should have been entered by the trial court: namely, the CIDs issued by the AG constitute administrative subpoenas as contemplated by the ECPA; the CIDs issued by the AG do not violate any constitutional principles as set forth in the Fourth Amendment to the United States Constitution or article I, section 15 of the Missouri Constitution; and Charter is hereby ordered to produce the non-content basic subscriber information requested by the June and July CIDs within thirty days from the date upon which final mandate issues from this Court in this appeal.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.

11